100 So.2d 688

**John P. LANEY, Adm'r, et al.**

**v.**

**L. E. DEAN.**

**6 Div. 4.**

Supreme Court of Alabama.

Jan. 23, 1958.

Rehearing Denied March 6, 1958.

Hugh A. Locke, Hugh A. Locke, Jr., and Ryburn H. Bailey, Birmingham, for appellants.

Lange, Simpson, Robinson & Somerville and J. G. Adams, Jr., Birmingham, for appellee.

LAWSON, Justice.

E. E. Dean, who resided in Jefferson County, died in 1928. He left a will, made in January of that year, which was admitted to probate soon after his death.

In his will E. E. Dean appointed his son as sole executor and gave to him one half of the estate after the payment of funeral expenses and just debts.

The testator made disposition of the remainder of his property in Items Four and Five of his will, which read:

"Item Four

"The residue and balance of my estate left after the payment of my just debts and funeral expenses and after the bequest to my son as set out in Item Three above, I do desire to place in trust for the purpose hereinafter named, and for said purposes I do hereby appoint my son, L. E. Dean, Trustee, to perform the following trust provisions of this my will. First, I do bequeath to the said L. E. Dean, out of said residue and balance of my estate, the sum of $1000.00, in trust to him in two equal parts that he shall have, hold, handle, invest and at his discretion dispose of same to the equal use of my two grandchildren, Lacie Lee Laney and Billy (Bill) Laney, and for the purpose of helping each of the two grandchildren acquire a grammar school, a high school or a practical business education. And it is my desire that at such time as each of said two grandchildren shall attain the age of twenty one years said Trustee shall turn over to said grandchildren the residue of his (or her) one half part of said trust fund, such residue to become the property of said grandchild absolutely and in fee simple forever.

"Item Five

"The residue and balance of my property and estate left after the payment of my just debts and funeral expenses, and after the bequests as set out in Item Three, and Item Four, above, I do desire to place in trust for the purposes hereinafter named, and for said purpose I do hereby appoint my son, L. E. Dean, Trustee, to perform the following trust provisions of this my will. In case I should die before January 1st, 1938, I do bequeath to the said L. E. Dean the entire residue and balance of my property and estate, in trust to him that he shall have, handle, and hold same until January 1, 1938, to the use of my daughter, Mrs. Evelyn Lacie Dean Laney, at which time, if my said daughter be then living, the said trustee shall turn over all of said property and estate to the said Mrs. Evelyn Lacie Dean Laney, such property and estate to rest in her and for her sole use, in fee simple forever; and should my said daughter, Mrs. Evelyn Lacie Dean Laney, die before January 1, 1938, then said Trustee to have and hold said property in trust for the use of my five grandchildren, Lacie Lee Laney, Billy (Bill) Laney, Alice Dean Laney, John Laney and Wilson Laney, until such time as the youngest shall attain the age of twenty-one years, said property and estate then to go absolutely and in fee simple to said grandchildren; and in case any of said grandchildren shall die before the termination of said trust then the lawful issue of said grandchild to take said grandchild's part, or if there be no such lawful issue then said deceased grandchild's part to go in equal parts to the surviving said grandchildren.

"In case I should die after January 1, 1938 it is my desire that said residue and balance of my property and estate shall go to my said daughter, Mrs. Evelyn Lacie Dean Laney, absolutely and in fee simple, if she be living at the time of my death; or if she be not living at the time of my death, then said property and estate to go to L. E. Dean, in trust for the use of my said

five grandchildren in the same manner as hereinbefore set out.

"It is my desire that the said Trustee shall have complete and sole charge of all property and interests constituting said trust funds, to hold, handle, manage, sell, convey, invest, and in such manner as he deems best for the interest of all concerned. It is my further desire that my said daughter shall have ample funds and income to provide for herself and such of her children as may make their home with her comfortably and suitably, and I will and direct said Trustee that he shall sell and convey such real estate or personal property as is necessary to provide for my said daughter."

Letters testamentary were duly issued to L. E. Dean. He acted as executor until his resignation in 1938, after which letters de bonis non with will annexed were granted to Basil A. Wood. In February of 1943, after the administration of the estate of E. E. Dean had been removed to the circuit court of Jefferson County, in equity, that court rendered a decree accepting Wood's resignation "as and when his final account is filed and determined." Wood was directed "to file an accounting of his actions in the management of the affairs of the said estate * * *." On September 13, 1943, Wood filed his report of his activities as administrator de bonis non and petition for final settlement.

On April 20, 1944, L. E. Dean and Mrs. Laney, the two principal beneficiaries under the will of E. E. Dean, signed the following written agreement:

"State of Alabama
"Jefferson County

"Know All Men By These Presents: That whereas L. E. Dean is over twenty-one years of age and an heir to one-half of the estate left by his father, E. E. Dean, and in addition is a creditor of the said estate of E. E. Dean, deceased, and Mrs. Lacey Dean Laney is over twenty-one years old and an heir to one-half of the said estate less One Thousand ($1000) Dollars out of her one-half to be given to her two children named in said will left by Mr. E. E. Dean, and,

"Whereas the said estate has been in court for a long time and substantial expenses and lawyers fees have been created and the administrator has been paid over Two Thousand ($2000) Dollars and there appears to be little likelihood of it being settled and the property distributed to the parties thereto without incurring greater expenses.

"So therefore to expedite the settling of the said estate and to save expenses in the settling of said estate and to save having to sell all the property of the said estate for payment of debts to L. E. Dean and for division, the two principal heirs named, L. E. Dean and Lacey Dean Laney have agreed and do hereby agree to be bound by and abide by the average value of each piece of property still remaining in and belonging to the estate of E. E. Dean, deceased, that shall be found and appraised by two disinterested official appraisers of the Realty Board Appraisers, who are members of the Birmingham Realty Board. That the expenses of said appraisal is to be paid out of the moneys of the estate as the part of the expense of said estate and that if the appraised value of each piece of property cannot be agreed upon by the appraisers then the average values shall be taken as ascertained by the two appraisers.

"By mutual consent it is agreed that the said estate shall be divided among the heirs and devisees as their interest appear in accordance with the conditions of the estate and the terms of the will taking into consideration the distributive share of said estate already received by Mrs. Lacey Laney, after all debts and costs of the administration have been paid, and they agree to execute conveyances to each other to carry out said division; and it is agreed

that the said appraised value shall be the value to be used in so settling up the estate and in paying the amount of the indebtedness to L. E. Dean, the same as though the property had sold for division for the amount of the appraised value.

"It is further agreed that in the event the two parties hereto cannot agree on the respective pieces of property that shall be taken by each in the distribution as each is respectively entitled to under the condition of the said estate and under the terms of said will then each of the parties hereto agree to appoint a representative and those two representatives shall then appoint an umpire or a third person and these three people shall partition and distribute the said property of the E. E. Dean estate, to L. E. Dean as a creditor, and to the said heirs in the amount that they are respectively entitled to as heirs. It is understood and agreed that Mrs. Laney shall have a part of the income bearing property as is fair and equitable under the distribution which is proportionate to what she is entitled to as to the amount L. E. Dean is entitled to. It is further agreed that Mrs. Laney shall have the right to name the two official Realty Board appraisers who shall appraise this said property.

"It is further agreed the value set by these appraisers shall be binding on both parties and that if either party after the appraisal is made refuses to abide by the said appraisal, and the distribution made by their representatives and the umpire, that the court shall make an order approving said appraisal as an official appraisal of the court and appoint three commissioners to partition and distribute the property to L. E. Dean first as a creditor and then to the heirs and devisees as they may be entitled thereto under the condition of the estate and order of court based on value of property as shown by said appraisal.

"In witness whereof the parties hereto have set their hands and seals this 20th day of April, 1944."

Thereafter on December 28, 1944, three prominent members of the appraisal committee of the Birmingham Real Estate Board made a report concerning the value which they had placed on most of the real estate remaining in and belonging to the estate of E. E. Dean, deceased. On February 5, 1945, Billy Laney appointed his mother, Mrs. Lacey Dean Laney, his agent and attorney in fact to act for him in the settlement of the estate of his grandfather, E. E. Dean. Apparently Mrs. Lacey Lee Laney Hopper also authorized her mother in writing to act in her stead in connection with the settlement of the E. E. Dean estate.

In the latter part of May, 1945, quitclaim deeds were exchanged between L. E. Dean, Mrs. Lacey Dean Laney, Billy Laney and Mrs. Lacey Lee Laney Hopper, for the purpose of effecting among themselves the distribution of the assets of the estate of E. E. Dean.

On June 1, 1945, L. E. Dean, Mrs. Lacey Dean Laney, Mrs. Lacey Lee Laney Hopper and Billy Laney filed what is termed their "answer to final settlement" wherein they averred in part as follows:

"Comes L. E. Dean and Lacey Dean Laney and Lacey Dean Laney in her capacity as Attorney in Fact for her two children who are named as devisees under the said will, namely, Lacey Lee Laney Hopper and E. D. (Billie) Laney, and says and shows unto this Honorable Court that the devisees under the said will have had the real estate appraised by competent appraisers and that they have divided and distributed among themselves the property and assets of the said Estate in accordance with the terms of said Will and that Quit Claim Deeds have already, on the 29th day of May, 1945, been executed by each of the respective

parties named in said Will as devisees, namely, L. E. Dean, Mrs. Lacey Dean Laney, E. D. (Billie) Laney, and Mrs. Lacey Dean Laney Hopper to each other, conveying to each other by Quit Claim Deed the respective share of said property. (Sic) That each has agreed on as being their just distributive share under the said Estate. That said deeds have been executed and delivered to the respective parties entitled thereto for recording in the probate office of Jefferson County, Alabama."

Thereafter, on July 12, 1945, the following "Decree of Final Settlement" was rendered by the circuit court of Jefferson County, in equity:

"This cause coming on to be heard is submitted for final decree upon the pleadings and proof as noted and upon the final settlement report of the administrator, Basil Wood as reported by the Register, and the amended final settlement report of Basil A. Wood, as administrator de bonis non cum testamento annexo as last amended and the answer of the heirs of and distributees of said estate.

"And upon consideration thereof, it is ordered, adjudged and decreed by the Court as follows:

"1. That the report of the Register on the original final settlement filed in this cause is ratified and confirmed; that the supplemental and amended final settlement, last filed in this Court is hereby confirmed with the exception that the amount of attorneys fee allowed to the administrator's Attorney is reduced from Seventy-five ($75.00) Dollars to Fifty ($50.00) Dollars and that the administrator is allowed a commission of Twenty-five ($25.00) Dollars.

"2. That the said amended report shows that the administrator has on hand in addition to the Twelve Hundred Ninety-four Dollars and ninety-five cents ($1294.95) * * * shown on the original final settlement report, an additional amount of Four Hundred Ninety Nine Dollars and Forty Two ($499.42) cents or a total balance of Seventeen Hundred Ninety Four Dollars and Thirty-six Cents ($1794.36) for payment of Court costs and distribution to the heirs. That the administrator, Basil A. Wood with the will annexed, out of the said Seventeen Hundred Ninety four and Thirty Six ($1794.36) Dollars is ordered to pay the balance of the Court costs incurred in this cause and is further ordered to pay the balance remaining in his hands, after the payment of the Court costs to L. E. Dean. That the guardian ad litem fee for service rendered E. D. (Billy) Laney and Lacey Lee Laney Hopper during their minority is fixed at Seventy Five ($75.00) Dollars and taxed as part of the costs and ordered paid to White Gibson.

"It appearing to the Court that the heirs, L. E. Dean, Lacey Dean Laney and Lacey Lee Laney Hopper and E. D. (Billie) Laney have effected a distribution of the assets of the said estate among themselves and in the distribution, L. E. Dean, has accepted property in full and complete settlement of his debt and claims against the estate as a creditor and it appearing to the Court that all of the parties named in the Will, namely, L. E. Dean, Lacey Dean Laney, Lacey Lee Laney Hopper and E. D. (Billie) Laney are over 21 years of age and that the distribution agreed to by the said heirs is equitable and fair and that they have executed Quit Claim Deeds to each other conveying the respective shares of the property of this estate to each other.

"And it is ordered and decreed that the administrator and the sureties on his bond be finally discharged upon his compliance with this decree and this estate closed.

"Ordered And Decreed this the 12th day of July, 1945."

Mrs. Lacey Dean Laney died in September of 1948, many years after the death of her daughter Alice Dean Laney, but only a short time after the death of her other daughter, Lacey Lee Laney, who was twice married, but who was known as Mrs. Lacey Lee Laney Hopper at the time of her death. Mrs. Lacey Dean Laney died intestate, survived by her three sons, John, Wilson and E. D., who will be referred to sometimes hereafter as Billy. Mrs. Laney was divorced from her husband, John P. Laney, Sr., in 1927.

Letters of administration on the estate of Mrs. Lacey Dean Laney were issued to John P. Laney, Jr., by the probate court of Jefferson County on December 28, 1948.

On June 13, 1949, John P. Laney, Jr., Wilson Laney and Bill Laney filed their bill in the circuit court of Jefferson County, in equity, against their uncle, L. E. Dean. John P. Laney, Jr., sued not only in his individual capacity but as administrator of his mother's estate. L. E. Dean was sued in his individual capacity and as executor of the estate of E. E. Dean and as trustee of Lacey Dean Laney under the will of E. E. Dean. The bill prayed that the decree of July 12, 1945, be set aside on the ground of fraud or because of the mental incapacity of Mrs. Laney at the time the decree was rendered. The bill alleged that Mrs. Laney was not represented by guardian ad litem or by general guardian in the proceedings leading up to the decree sought to be vacated. The complainants prayed for other relief which, if we construe the bill correctly, was dependent upon their right to have the decree of July 12, 1945, set aside on one of the asserted grounds.

The trial court sustained the grounds of demurrer interposed by L. E. Dean which took the point that the bill was filed too late since it was an original bill in the nature of a bill of review and was not filed within three years from July 12, 1945.

From that decree the complainants appealed to this court. In reversing the decree of the trial court, we held that the bill was timely filed in so far as it sought to vacate the decree of July 12, 1945, on the ground of the mental incapacity of Mrs. Laney. See Laney v. Dean, 258 Ala. 37, 61 So.2d 109.

After remandment the bill was several times amended. L. E. Dean interposed demurrer and answered the bill as finally amended. Demurrer was overruled. After a hearing lasting many days wherein most of the testimony was taken orally before the trial judge, a final decree was rendered which denied to complainants the relief which they sought and dismissed their bill. From that decree complainants have appealed here.

The proceedings before the trial court presented questions of fact, one of which was whether Mrs. Lacey Dean Laney was of sound or unsound mind at the time the division of the property was effectuated and the decree of final settlement here sought to be vacated was rendered. The trial court determined from the evidence that she was of sound mind. The appellants contend that in so finding the trial court committed error.

The findings of the trial court as to the mental capacity of Mrs. Lacey Dean Laney are incorporated in that part of its decree hereinafter set out:

"A principal issue presented by the pleadings was whether Mrs. Evelyn Lacey Dean Laney (or Mrs. Lacey Dean Laney as she was sometimes called), deceased, the mother of the complainants (who will be referred to henceforth as Mrs. Laney) was of sound or unsound mind at time of the execution of the deeds, and when the division of property was made, between and among herself, the respondent Dean, and two of the children of the complainant, E. D. (Billie) Laney and Lacey Lee Laney Hopper, for a period commencing prior to May 29, 1945, and extending until after May 31, 1945, and also on July 12, 1945, the time of the rendition of a final decree of the Cir-

cuit Court, Tenth Judicial Circuit of Alabama, in Equity (in Cause No. 47026 in this Court, involving the administration of the estate of E. E. Dean, deceased). Incidentally involved was also the question whether Mrs. Laney was of sound or unsound mind at the time of the execution of a written contract by Mrs. Evelyn Laney on April 20, 1944 (Respondents' Exhibit No. 10 in evidence), in which it was agreed that the property of the estate of her father, E. E. Dean, deceased, and of the complainant, Lee E. Dean, should be divided among the beneficiaries in accordance with the terms of the father's last will and testament. While testimony introduced in behalf of complainants, such as the testimony of the complainants themselves, Mrs. Laney's children, tended to support the allegations of the bill of complaint on that issue, the evidence introduced in behalf of the respondent, Dean, including the testimony of neighbors and acquaintances of Mrs. Laney, both business and social, of attorneys who had represented her over a long period of time, and of the administrator, with will annexed, was to the contrary. While Dr. Benjamin Morton, a qualified psychiatrist, expressed an opinion from the witness stand that Mrs. Laney was a paranoiac, his testimony was that he saw her only one time and then for only a period of approximately 20 or 30 minutes in his office to which she was brought by her children, and he admitted that his opinion was based in large measure or degree upon the history then related to him by one or more of the complainants. The Court is not convinced from the evidence that such a history was accurate and was not exaggerated. While the evidence tended to show that Mrs. Laney was a person of peculiarities, of a nervous temperament, and having neurotic tendencies, after a full consideration of all the evidence the Court is not reasonably satisfied that Mrs. Laney was of unsound mind under the issues in this case. In fact, there is much evidence which showed that she had at least a fairly intelligent understanding of the contents and location of the property belonging to the estate of her father and a fairly intelligent sense of values with reference thereto. Complainants have not met the burden of proof necessary to establish unsoundness of mind which would invalidate the agreement or agreements for the division of the estate, or the instruments by which such division was attempted to be effected, or the said final decree of July 12, 1945.

"Furthermore, even if the proof had been convincing that she was afflicted with a fixed or permanent insanity to the extent that the burden of going forward with the evidence, to show that on the occasion of the acts and at the time in question she underwent a lucid interval or intervals shifted to the respondent, the Court would be of the opinion that the evidence introduced by the respondent Dean sufficiently met that burden by showing that the transactions and acts in question occurred during such lucid intervals. In no case have complainants met the burden of proving to the reasonable satisfaction of the Court from the evidence that said Mrs. Laney was of unsound mind and that the division of the property, and the deeds or instruments working toward and affecting the division, or the decree of July 12, 1945, are invalid on account of her mental condition."

■ The evidence on this issue is presented in great detail by the 1450 page record, all of which has been carefully and painstakingly considered. We are unwilling to burden this opinion with a detailed recitation of the evidence as it bears on this issue, for we think it is more than ample to sustain the findings of the trial court. As we have shown, most of the testimony was taken orally before the trial court and under such circumstances, fol-

lowing the uniform decisions of this court, the findings of fact by the trial court will not be disturbed unless very plainly wrong. Wilder v. Loehr, 211 Ala. 651, 101 So. 591; Rodgers v. Thornton, 254 Ala. 66, 46 So.2d 809·; Christian v. Reed, 265 Ala. 533, 92 So.2d 881; Pitts v. Hawkins, 264 Ala. 428, 87 So.2d 835; Miles v. Moore, 262 Ala. 441, 79 So.2d 432. In the instant case it appears to us that the preponderance of proof sustains the conclusion of the trial court that Mrs. Lacey Dean Laney was entirely competent in every respect and completely understood the nature of the transactions here sought to be vacated.

The other serious insistence made by appellants is that the trial court erred in not invalidating the decree of July 12, 1945, because of fraud on the part·of L. E. Dean.

There is no doubt of the general jurisdiction of a court of equity to annul decrees of courts of competent jurisdiction which have been obtained by fraud. Davis v. Davis, 211 Ala. 317, 100 So. 345; Hooke v. Hooke, 247 Ala. 450, 25 So.2d 33. But such a decree is impeachable only for actual fraud in its procurement. McDonald v. Pearson, 114 Ala. 630, 21 So. 534; Graves v. Brittingham, 209 Ala. 147, 95 So. 542; Hooke v. Hooke, supra. Constructive fraud is not sufficient to justify relief in an original bill in the nature of a bill of review. Laney v. Dean, supra.

We think that a reading. of this record shows that the litigation results from the fact that the part of the property which L. E. Dean secured has within the past few years become more valuable than that which went to the mother of these complainants. That fact alone, of course, is entirely insufficient to justify a court of equity in vacating the decree of July 12, 1945, and we are unable to find in this record any evidence which tends to support a finding that L. E. Dean committed actual fraud ·in the concoction or procurement of the decree sought to be vacated which was extrinsic or collateral to the matter there determined. See Hooke v. Hooke, supra;

Anderson v. Anderson, 250 Ala. 427, 34 So. 2d 585.

We are clear to the conclusion that under the evidence before us the trial court did not err in refusing to vacate the proceedings on the ground of fraud.

We think it well to make it clear that in our opinion there was no relationship of trustee and cestui que trust under the will of E. E. Dean at the time of the negotiations and division of the property in 1945. By the terms of the will the trust terminated as far as the two children were concerned when they reached their majority and on January 1, 1938, in so far as Mrs. Lacey Dean Laney was concerned.

We have given much time and study to the voluminous record and the briefs filed here on behalf of the parties and are convinced that the decree of the trial court is due to be. affirmed. It is so ordered.

Affirmed.

SIMPSON, GOODWYN and MERRILL, JJ., concur.